FRANCIS E. DADDARIO *vs.* CAPE COD COMMISSION.

Suffolk. March 4, 1997. - July 11, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, & FRIED, JJ.

*Cape Cod Commission. Regulatory Agency. Constitutional Law,* Regulation, Taking of property.

This court concluded that property owners aggrieved by an action of the Cape Cod Commission disapproving a commercial project could not assert a taking claim under St. 1989, c. 716, § 17 (*b*), absent a final determination by the commission on the nature and extent of development that the commission would permit. [414-415]

Discussion of the principles to be applied and factors to be considered in determining whether government conduct amounts to a regulatory taking. [415-417]

In the circumstances of the Cape Cod Commission's disapproval of the proposed extraction of sand and gravel from a certain parcel of land in an agricultural district, the record before a judge of the Land Court did not support his ruling that a regulatory taking had occurred, where the commission's decision did not preclude less extensive mining than proposed and where the property had substantial value for alternative uses. [417-418]

CIVIL ACTION commenced in the Land Court Department on March 1, 1995.

The case was heard by *Robert V. Cauchon,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Eric W. Wodlinger (H. Hamilton Hackney III* with him) for the defendant.

*V. Douglas Errico (Thomas O. Moriarty* with him) for the plaintiff.

The following submitted briefs for amici curiae:

*Paul W. Edmondson, Elizabeth S. Merritt, & Laura Nelson,* of the District of Columbia, *& Jerold S. Kayden,* for the National Trust for Historic Preservation in the United States.

*Jeffrey M. Bernstein & Kenneth L. Kimmell* for the Association for the Preservation of Cape Cod, Inc., & others.

*Scott Harsbarger*, Attorney General, & *Madelyn Morris*, Assistant Attorney General, for the Commonwealth.

*R. Jeffrey Lyman* for the Massachusetts Audubon Society & another.

LYNCH, J. The plaintiff filed an action in the Land Court against the Cape Cod Commission (commission), pursuant to St. 1989, c. 716, An Act establishing the Cape Cod Commission (act), seeking judicial review and declaratory relief from the denial of a development permit. The judge ruled that the commission's decision constituted a taking under the State and Federal Constitutions, and pursuant to § 13 (*f*) of the act, ordered the commission to approve the plaintiff's development. We granted the commission's application for direct appellate review, and now vacate the decision of the Land Court.

The judge found the following facts. The commission was created to coordinate regional planning and land use development on Cape Cod. To accomplish this objective, the commission drafted a regional policy plan which seeks to balance economic development and natural resource conservation. Developments of regional impact, including any outdoor commercial space greater than 40,000 square feet, are reviewed by the commission to determine whether they conform with the regional plan. § 12 (*c*) (6) of the act. The commission may approve, or approve with conditions, a proposed development if (1) the probable benefit from the project outweighs the probable detriment, (2) the project is consistent with the regional policy plan, and (3) the project is consistent with municipal development by-laws. § 13 (*d*) of the act. If the commission disapproves, the project may not go forward. However, any party aggrieved by the commission's decision may seek judicial review in the Superior Court or the Land Court. § 17 (*b*) of the act.

In 1964, the plaintiff purchased seventy acres of land (parcel) in Falmouth. The parcel is located in an AGA (agricultural) zoning district. Pursuant to art. XXIX of the Falmouth zoning by-laws (by-laws), earth removal is permitted in an AGA zoning district on the issuance of a special permit.[1]

---

[1] The by-laws require that earth removal sites have a border buffer strip of at least one hundred feet from the side line of any road and two hundred feet from all abutting property lines, unless written consent of the abutting property owner has been received by the zoning board of appeals of Falmouth. The by-laws also require reclamation by grading, reloaming, and seeding.

In February, 1994, the plaintiff applied to the zoning board of appeals of Falmouth (board) for a special permit. The proposed project called for the extraction of sand and gravel in seven phases, each approximately five acres. Each phase was to be reclaimed through grading, loaming, and seeding before work commenced on the next. The project qualified as a development of regional impact and the board referred it to the commission for review.[2]

In June, 1994, the plaintiff submitted an application with the requisite materials. After two public hearings, the commission denied the plaintiff's application because it did not meet the commission's standards for protection of natural resources, preservation of open space, and acceptable burdens on community infrastructure. The commission concluded that the proposed project "would not enhance or protect open space on the site in a way that respects the importance of sensitive natural resources of Cape Cod." The plaintiff appealed from the commission's decision to the Land Court.

The judge ruled that the commission's actions constituted a regulatory taking. He found that, prior to the commission's action, the parcel had "substantial value as a sand and gravel operation and that thereafter it had little or none." The judge indicated:

> "I do not find it necessary herein to determine precise before and after values, as the remedy provided for by the act is not money damages but, most likely in an effort to avoid such payments, grant of the requested relief. I do find that even though [the parcel] may still have substantial value for other development, the magnitude of the financial loss, as supported by the evidence, and the loss of an owner's right to use his property as he wishes, certainly demonstrate that the action of the [c]ommission has crossed the line from a noncompensable 'mere diminution' to a compensable taking."

The judge ordered the commission to approve the plaintiff's plan subject to certain conditions.

---

[2]Once a municipal agency refers a proposed development to the commission or receives notice of the commission's intent to review a project, the municipal agency must suspend its review. § 12 (h) of the act.

The commission appealed arguing that the court erred in ruling that the commission's disapproval of the project constituted a regulatory taking. The commission further argued that the decision entered in the Land Court was erroneous in that the judge (a) ordered the commission to approve the project and established the only conditions to be attached to the approval; (b) failed to provide adequate findings of fact as required by Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996); (c) applied the wrong standard of review to the commission's decision; and (d) failed to find that there was sufficient evidence at trial to demonstrate that the commission's decision was not arbitrary or capricious. Because we decide that the judge erroneously concluded that the commission's action constituted a taking, we need not reach these additional arguments.

*Discussion.* In deciding this case we consider both the Federal ripeness doctrine and regulatory taking principles and determine that both lead to the conclusion that the result below cannot be affirmed.

a. *Ripeness doctrine.* The Supreme Court has consistently declined to consider unripe takings claims. See *MacDonald, Sommer & Frates* v. *County of Yolo*, 477 U.S. 340, 351 (1986); *Williamson County Regional Planning Comm'n* v. *Hamilton Bank*, 473 U.S. 172, 186 (1985); *Agins* v. *Tiburon*, 447 U.S. 255, 260 (1980). See also *Wilson* v. *Commonwealth*, 413 Mass. 352, 356 (1992). The ripeness doctrine provides that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Regional Planning Comm'n* v. *Hamilton Bank, supra* at 186.

The act's provisions for judicial review of the commission decisions may be in conflict with the ripeness doctrine as it applies to takings claims. Section 13 (*f*) of the act provides:

> "Notwithstanding the provisions of subsection (*d*) of section thirteen, the commission shall approve or approve with conditions a development of regional impact where an applicant demonstrates that to disapprove the development of regional impact would constitute a taking of property in violation of the Massachusetts and United States Constitu-

tions; provided, however, that no reasonably foreseeable danger to the public health or safety will arise from such approval or approval with conditions."

Section 17 (*b*) of the act further provides: "Any party aggrieved by a commission decision on a development of regional impact may appeal the commission's decision to the Barnstable county superior court or the land court." There is no requirement that the applicant must submit alternative plans or demonstrate that a final determination has been reached on the nature and extent of the permitted development before appealing from a decision. Thus, the statute can be interpreted to provide for judicial review of individual decisions to determine whether the commission's disapproval constitutes a taking. See *Keenan, petitioner*, 310 Mass. 166, 179 (1941) (General Court has power to modify, enlarge, diminish, or transfer jurisdiction). See also Part II, c. 1, § 1, art. 3, of the Massachusetts Constitution.

However, "[i]t follows from the nature of a regulatory takings claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property. A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." *MacDonald, Sommer & Frates* v. *County of Yolo, supra* at 348. Thus, property owners cannot assert a taking claim under § 17 (*b*) absent a final determination on the nature and extent of development that the commission will permit.

b. *Regulatory taking principles.* The judge found that, prior to the commission's action, the plaintiff's property had substantial value as a sand and gravel operation and thereafter it had none, although the property may still have substantial value for other development. The plaintiff argues that this was proper because his proposal was the only economically viable alternative for mining operations and thus the commission's denial of it was a taking.[3] We disagree. We conclude that the record does not support a finding that a taking has occurred.

"When a regulatory taking involves neither a physical invasion nor a complete deprivation of use, as in the case here, Federal law

_____

[3]The plaintiff's argument that art. 10 of the Massachusetts Declaration of Rights grants him greater rights than the United States Constitution does not rise to the level of appellate argument. See *Greater Media, Inc.* v. *Department of Pub. Utils.*, 415 Mass. 409, 418 (1993) (four-sentence discussion which merely cites statute does not rise to level of proper appellate argument).

has established several interrelated factors which are to be considered in determining whether a compensable taking has occurred: '(1) "the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action." ' " *Leonard* v. *Brimfield,* 423 Mass. 152, 154, cert. denied, 117 S. Ct. 582 (1996), quoting *Connolly* v. *Pension Benefit Guar. Corp.,* 475 U.S. 211, 225 (1986). See *Lopes* v. *Peabody,* 417 Mass. 299, 304 (1994). See also *Lucas* v. *South Carolina Coastal Council,* 505 U.S. 1003, 1015 (1992), and cases cited. "[T]here may . . . be a regulatory taking based, in part, on the regulation's economic impact on the property as a whole and the extent to which the regulation has interfered with a property owner's distinct investment-based expectations." *Steinbergh* v. *Cambridge,* 413 Mass. 736, 742 (1992), cert. denied, 508 U.S. 909 (1993), citing *Penn Cent. Transp. Co.* v. *New York City,* 438 U.S. 104, 124-125, 130-131 (1978).

" 'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." *Moskow* v. *Commissioner of Envtl. Mgt.,* 384 Mass. 530, 533 (1981), quoting *Penn Cent. Transp. Co.* v. *New York City, supra* at 130-131. Rather, the proper focus is on the character of the action and the nature of the interference with the rights in the property as a whole. See *Steinbergh* v. *Cambridge, supra* at 742; *Moskow* v. *Commissioner of Envtl. Mgt., supra.* "When the claim is that government conduct, not amounting to a permanent physical occupation or confiscation of property, involves a regulatory taking, the analysis is peculiarly fact dependent, involving 'essentially ad hoc, factual inquiries.' " *Steinbergh* v. *Cambridge, supra* at 741, quoting *Penn Cent. Transp. Co.* v. *New York City, supra* at 124. Thus restrictions on a landowner's right to extract minerals from his property is not necessarily a regulatory taking when the property as a whole retains substantial value. See *Keystone Bituminous Coal Ass'n* v. *DeBenedictis,* 480 U.S. 470, 496-497 (1987); *Hodel* v. *Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 296-297 (1981).

This court has repeatedly recognized that government regulations "may deprive an owner of a beneficial property use — even the most beneficial such use — without rendering the regulation

an unconstitutional taking." *Moskow* v. *Commissioner of Envtl. Mgt.*, *supra*, quoting *Lovequist* v. *Conservation Comm'n of Dennis*, 379 Mass. 7, 19 (1979). See *Leonard* v. *Brimfield*, *supra* at 156. "Land use planning is not an all-or-nothing proposition. A government entity is not required to permit a landowner to develop property to [the] full extent he might desire or be charged with an unconstitutional taking of the property." *MacDonald, Sommer & Frates* v. *County of Yolo*, 477 U.S. 340, 347 (1986). That an alternative, permissible use might be less profitable is not determinative. See *Penn Cent. Transp. Co.* v. *New York City*, *supra* at 124.

We conclude that the record before us does not support the ruling that a regulatory taking took place. The commission denied the plaintiff's proposal to mine thirty-two acres. This denial did not preclude less extensive sand and gravel operations. See *Keystone Bituminous Coal Ass'n* v. *DeBenedictis*, *supra* (no taking where regulation only restricted amount of coal which could be extracted). In fact, the commission's staff proposed a plan which would have permitted sand and gravel extraction on twenty-five acres, but the plaintiff declined to consider this alternative or modify his proposal. While not conclusive, the staff's plan demonstrated a willingness to permit less extensive mining proposals.[4] The denial of a particular plan cannot be equated with a refusal to permit any development. See *MacDonald, Sommer & Frates* v. *County of Yolo*, *supra* at 347.

Even if less extensive mining operations were not feasible, the record shows that the property has substantial value for alternative uses. The property is zoned in an agricultural district, which under the Falmouth zoning by-laws, allows for community

---

[4]It is possible that the plaintiff's proposal for sand and gravel operation is the only economically viable plan for the site, in which case its denial might constitute a regulatory taking. Because there has been no final determination regarding the nature and extent of the regulation in this case, "it is impossible to tell whether the land retain[s] any reasonable beneficial use or whether [existing] expectation interests [have] been destroyed." *MacDonald, Sommer & Frates* v. *County of Yolo*, 477 U.S. 340, 349 (1986), quoting *Williamson County Regional Planning Comm'n* v. *Hamilton Bank*, 473 U.S. 172, 189-190 n.11 (1985). However, we need not speculate on this issue where there is clear evidence that the plaintiff owns more than a mineral estate and the property has other valuable uses. See *Hodel* v. *Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 296-297 (1981).

service, agricultural, and residential uses.[5] There is no evidence in the record that the commission would oppose a residential development on the plaintiff's property. Indeed, the plaintiff contemplated residential use after removing the sand and gravel.

"Since loss of economic use and value is the issue in this regulatory taking case, it is not possible, absent a valid determination in the record of the 'after imposition' value, to know if a taking occurred . . . ." *Florida Rock Indus., Inc.* v. *United States*, 18 F.3d 1560, 1579 (Fed. Cir. 1994), cert. denied, 513 U.S. 1109 (1995). Because it is possible that less extensive sand and gravel operations may be approved and that the property has substantial economic value for other uses, we conclude that the findings of the judge do not support his conclusion that there was a taking.

The judgment is vacated and the matter is remanded to the Land Court for further proceedings consistent with this opinion.

*So ordered.*

---

[5]There was ample evidence in the record to show that the property had substantial value even without a permit to remove sand and gravel.