At issue before us is whether the denial of the plaintiff trustee's application for a lodging license amounts to an unconstitutional regulatory taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights. We conclude that it does not.
Background. We draw the facts from the summary judgment record and note where they are disputed. When Wesley Oprzedek, as trustee of the Oprzedek Realty Trust, purchased 68 Dane Street in the city of Beverly (city) in 2009 for $875,000, the property had been operated as a lodging house, authorized by annually renewed licenses since 1939. The trustee continued to operate the property as a lodging house and applied to the city for and was granted the required annual lodging licenses for 2010, 2011, and 2012. He spent in excess of $250,000 to renovate and repair the premises.
The parties agree that "[a]t the time the [t]rust invested in the [the property], [the trustee] reasonably believed that [he] would be able to continue to use the property for the purpose intended and for which it had been used for a [seventy-five] year period, specifically a rooming house." When, in November, 2012, the trustee applied for a lodging license for 2013, the city renewed the license for only ninety days even though the applicant was in "general compliance with building, health and [e]lectrical requirements." His subsequent application dated February 28, 2013, was denied on March 25, 2013. The trustee did not appeal from that decision.
On July 16, 2014, the trustee reapplied for a lodging license but after a hearing on October 14, 2014, the city denied the application. The trustee's complaint alleges on information and belief that the denial was the result of political and neighborhood pressure. The minutes of the city council meeting note that councilors "were opposed to issuing a license due to past issues" and that the owner had not complied with CORI[3] and SORB[4] checks of tenants. The city's committee on legal affairs recommended that the city council deny the license.
The trustee alleges that he explored other potential uses of the property but they were not viable. He alleges that the value of the property with a lodging house license was $950,000. On October 7, 2015, the trustee sold the property for $659,000. Before the sale was completed, the city granted the new owner a lodging license.[5]
The trustee did appeal from the 2014 denial pursuant to G. L. c. 140, § 30, and included a regulatory taking claim and an interference with existing and prospective contractual relations claim.[6] A Superior Court judge granted summary judgment to the city. In his summary judgment memorandum, the judge noted that the trustee disputes the allegations regarding his noncompliance with SORB and CORI checks, and the judge therefore did not consider those allegations for summary judgment purposes. He dismissed the claim under G. L. c. 140, § 30, as moot because it sought an order compelling the board to issue a lodging license to the trustee but he had sold the property. Applying the analysis set forth in Penn Central Transp. Co. v. New York City, 438 U.S. 104, 124 (1978) (Penn Central ), the judge also denied the taking claim. He concluded that (i) the summary judgment record did not establish a sufficient decrease in value to support a regulatory taking claim, (ii) the trustee's expectation of receiving a renewed license each year did not give rise to vested rights in a license and, therefore, he was entitled only to fair treatment; and (iii) the character of the governmental action consisted of a discretionary denial of a requested license and was not a physical invasion of the property.
Discussion. On appeal, the trustee does not challenge the motion judge's conclusion that his G. L. c. 140, § 30, appeal from the denial of a lodging license is moot because the property has since been sold, and he does not pursue the license denial issue. The only issue before us, therefore, is whether denial of the trustee's license applications constituted a regulatory taking.[7]
It is not entirely clear that the trustee has a property interest compensable under the takings clause of the Fifth Amendment and art. 10 in the renewal of a lodging license that must be renewed annually and is nontransferable.[8] See Carney v. Attorney Gen., 451 Mass. 803, 816 (2008), quoting from Members of the Peanut Quota Holders Assn. v. United States, 421 F.3d 1323, 1331 (Fed. Cir. 2005), cert. denied, 548 U.S. 904 (2006) (compensable taking of intangible interest "is indicated by the absence of express statutory language precluding the formation of a property right in combination with the presence of the right to transfer and the right to exclude"). See also Liggett Drug Co. v. Board of License Commrs. of N. Adams, 296 Mass. 41, 52-53 (1936) (licenses were "mere permissions and in no sense property"; petitioners had no right to renewal, only "fair treatment"). But even if we assume the trustee has potentially identified a compensable property interest, we agree with the motion judge that there was no taking.
First, "[o]ne of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " Dolan v. Tigard, 512 U.S. 374, 384 (1994), quoting from Armstrong v. United States, 364 U.S. 40, 49 (1960). Here, the city made a determination to deny this particular applicant a license. It did not enact a city-wide prohibition of lodging houses or prohibit any other owner of this property from obtaining a license. We have said in the context of college dormitories, which fall within the definition of "lodging houses" in G. L. c. 140, § 22, that "[a] dormitory license may be denied because the facilities are physically inadequate, because the applicant institution has a bad record in running dormitories, or because supervisors are unqualified, or of bad character." Trustees of Boston Univ. v. Licensing Bd. of Boston, 24 Mass. App. Ct. 475, 477 (1987), quoting from Newbury Jr. College v. Brookline, 19 Mass. App. Ct. 197, 207 (1985). In the absence of an active appeal of the denials, we must assume the denials of the trustee's license applications were legally valid, based on permissible considerations such as the foregoing.[9] In these circumstances, the record reveals no reason the public as a whole should bear the burden of the applicant's denial which may well have been based on his personal history of operating the lodging house.
Moreover, the trustee fares no better if we apply the multi-factor inquiry outlined in Penn Central, supra, to determine whether, on the facts before us, the lodging house regulation has gone too far and amounts to a taking. "To determine whether there has been a compensable regulatory taking, we look to: '(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.' " Fitchburg Gas & Elec. Light Co. v. Department of Pub. Util., 467 Mass. 768, 783-784 (2014), quoting from Daddario v. Cape Cod Commn., 425 Mass. 411, 416, cert. denied, 522 U.S. 1036 (1997). "We have previously noted that the mere fact that owners could make a more profitable use of the property and had intended to do so is not sufficient interference with investment-backed expectations." Fitchburg Gas & Elec. Light Co., 467 Mass. at 784, citing Flynn v. Cambridge, 383 Mass. 152, 159-160 (1981). Use restrictions that diminish property value do not alone establish a taking. Flynn, 383 Mass. at 160-161. See also Lovequist v. Conservation Commn. of Dennis, 379 Mass. 7, 19 (1979) (regulation "may deprive an owner of a beneficial property use-even the most beneficial such use-without rendering the regulation an unconstitutional taking").
Moreover, while the trustee may have had reasonable investment-backed expectations in continued operation of a lodging house, he could not have had an expectation that his use could continue if he did not qualify for a license. See Leonard v. Brimfield, 423 Mass. 152, 155, cert. denied, 519 U.S. 1028 (1996) ("A property owner's investment-backed expectations must be reasonable and predicated on existing conditions"). The trustee was well aware that continued operation of a lodging house was dependent on qualifying for a license; that under existing conditions he did not qualify for a license does not convert the denial into a taking. Finally, the character of the government action, a valid discretionary denial of a license application, "is the type of limited protection against harmful private land use that routinely has withstood allegations of regulatory takings." Gove v. Zoning Bd. of Appeals of Chatham, 444 Mass. 754, 767 (2005).
Judgment affirmed.

Criminal Offender Record Information.

Sex Offender Registry Board.

Though the record is not clear whether the sale was contingent on the buyer obtaining a lodging house license or whether the license affected the price, because this was a motion for summary judgment, we will review the record in the light most favorable to the plaintiff, the nonmoving party, and assume that the lack of license reduced the price.

The trustee filed the original complaint in the Housing Court. The case was transferred to the Superior Court and then the city removed it to the United States District Court, where the trustee filed a four-count amended complaint, adding a due process count. The Federal judge dismissed the trustee's due process and interference with contractual relations claims and remanded the remaining two counts back to the Superior Court.

Although the record is unclear, we assume the trustee claims the 2013 and 2014 denials, collectively, amount to a taking.

The city contends that the trustee failed to exhaust his administrative remedies by not appealing from the 2013 denial and by failing to continue pursuing his appeal of the 2014 denial and, therefore, should be precluded from bringing a takings claim. The purpose of the exhaustion requirement is to ensure that the administrative agency has made a final determination such that a reviewing court can assess whether the agency has gone "too far." Commonwealth v. Blair, 60 Mass. App. Ct. 741, 746-747 (2004) (quotation omitted). Here, the city has twice rejected the trustee's application for a license. The city does not suggest that it had not "arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." Williamson County Regional Planning Commn. v. Hamilton Bank of Johnson City, 473 U.S. 172, 191 (1985). See Hamilton v. Conservation Commn. of Orleans, 12 Mass. App. Ct. 359, 372-374 (1981) (if plaintiff accepts correctness of department's decision, no need to pursue administrative appeal before commencing suit alleging taking). While we conclude that the trustee's decisions to not pursue appeals from the denials does not preclude his takings claim, the trustee is prohibited from arguing that the city invalidly denied his application for reasons that could have been raised in a licensing appeal. See ibid. A takings claim is not a substitute for an administrative appeal.

This is not an issue that raises a question of material fact rendering summary judgment inappropriate. Rather, the trustee has simply waived an argument that the denials were invalid by failing to appeal from the 2013 denial and not arguing the merits of the 2014 denial.