Richard Beach appeals from judgments of the Superior Court; the first is a summary judgment for the town of Norfolk (town) and its conservation commission (commission) on his takings claims, and the second dismissed claims against individual employees and a consultant of the town. We affirm.
The developers sought to develop approximately thirty-eight acres of property in Norfolk.[4] They knew that the extent the locus could be developed was uncertain but expected that even if they could build only one house, they would be able to sell it for a substantial amount. As it turns out, they expended considerable sums in an effort to permit a fifteen-lot subdivision which required a bridge to cross over a stream and replication of disturbed wetlands. The plaintiff contends that delays and unfair and capricious application of the wetlands regulations, as demonstrated by the conditions imposed by the commission in granting an order of conditions for a fourteen-lot subdivision (the 2007 final decision), amounted to an unconstitutional taking of the property. Specifically, the plaintiff claims that in approving the developers' plan, the commission imposed conditions never imposed on other projects, including that (i) construction could not commence until two full growing seasons[5] had elapsed after the completion of required wetland replication, (ii) the commission's consent was required before the 2007 final decision could be assigned to a third-party purchaser; and (iii) no certificate of compliance would be issued for five years after completion of the work. The plaintiff contends that these conditions, along with the commission's multiple delays highlighted by its failure for over a year to authorize its consultant to review revised plans submitted as required by the 2007 final decision, constituted a taking.
The developers commenced an appeal of the conditions imposed in the 2007 final decision but ultimately asked that it be dismissed with prejudice due to financial constraints. Subsequently, the developers brought this action against the town, the commission, individual employees of the town, and the commission's consultant, Graves Engineering, Inc. (Graves). Later, Beach was substituted as the plaintiff. The town successfully moved for summary judgment. The primary focus of this appeal is on the claim that the 2007 final decision and commission's delays amount to a regulatory taking by the commission and the town.[6]
Discussion. A. Failure to exhaust. As an initial matter, we agree with the motion judge that the developers' failure to complete a certiorari appeal of the 2007 final decision does not necessarily preclude him from bringing a takings claim. It is true that "[t]he Supreme Court of the United States has generally denied landowners the right to challenge land use regulations as takings until they have shown that available legal processes, not yet used, will not eliminate the alleged taking." Wilson v. Commonwealth, 413 Mass. 352, 356 (1992). Indeed, if the commission exceeded its authority in imposing the conditions in the 2007 final decision or the commission applied the regulations in what the plaintiff claims is an "unequal, arbitrary and capricious" way, the plaintiff's remedy was to challenge the commission's action through a certiorari appeal. Fieldstone Meadows Dev. Corp. v. Conservation Commn. of Andover, 62 Mass. App. Ct. 265, 267 (2004).
However, we have allowed plaintiffs who accept the validity of wetland regulations as applied to them to proceed with a takings claim without first pursuing an administrative appeal. See Hamilton v. Conservation Commn. of Orleans, 12 Mass. App. Ct. 359, 372-373 (1981) (where plaintiff accepts correctness of department's decision, no need to pursue G. L. c. 30A, § 14, appeal before commencing suit for damages for a taking). The plaintiff acknowledges this in his brief where he cites W.R. Grace & Co.-Conn. v. Cambridge, 56 Mass. App. Ct. 559, 573 n.10 (2002) (W.R. Grace ), and notes that "a regulatory taking claim 'presupposes that the regulation is valid as applied to the locus.' " Ibid. In proceeding with the takings claim, the plaintiff must accept the validity of the 2007 final decision, including the conditions imposed.[7] To the extent the plaintiff relies on the argument that the conditions imposed were arbitrary and capricious, that argument was waived when the plaintiff dismissed that appeal.
B. Summary judgment standard. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate shall be entered against him." Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974). "[B]are assertions and conclusions" based on "understandings, beliefs, and assumptions are not enough to withstand a well-pleaded motion for summary judgment." Benson v. Massachusetts Gen. Hosp., 49 Mass. App. Ct. 530, 532 (2000), quoting from Polaroid Corp. v. Rollins Envtl. Servs.(NJ), Inc., 416 Mass. 684, 696 (1993).
The plaintiff suggests that the decision of a judge on an earlier motion to dismiss, ruling in his favor on certain elements of his claim, is "the law of the case." However, not only is a "second judge [ ] not obliged to follow an earlier ruling by another judge," Martin v. Toy, 54 Mass. App. Ct. 642, 644 (2002), but the plaintiff's burden is different on summary judgment than it was on the motion to dismiss. Hiles v. Episcopal Diocese of Mass., 437 Mass. 505, 515-516 (2002). Rather than simply stating a claim, in order to defeat a well-pleaded summary judgment motion, the plaintiff had to demonstrate there was a reasonable expectation that he could prove the essential elements of his claim at trial. Benson, supra at 533.
C. Regulatory taking claim. Accepting the validity of the conditions imposed, we consider whether they amounted to a taking of the property. "When a regulatory taking involves neither a physical invasion nor a complete deprivation of use, as in the case here, Federal law has established several interrelated factors which are to be considered in determining whether a compensable taking has occurred: (1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' " Daddario v. Cape Cod Commn., 425 Mass. 411, 415-416, cert. denied, 522 U.S. 1036 (1997), quoting from Leonard v. Brimfield, 423 Mass. 152, 154, cert. denied, 519 U.S. 1028 (1996). We review each of these factors.
1. Economic impact on the developers. In terms of economic impact, the plaintiff focuses on the $2.9 million he claims reflects the purchase price of the property and the costs expended to develop it. Our takings cases that have considered the economic impact of a wetlands by-law, however, compare the value of the land before and after the order of conditions. See Giovanella v. Conservation Commn. of Ashland, 447 Mass. 720, 734 (2006). "A small economic impact is insufficient to demonstrate a taking; a property owner must show that the economic impact of the governmental regulation was severe." Zanghi v. Board of Appeals of Bedford, 61 Mass. App. Ct. 82, 89 (2004). The Supreme Judicial Court has noted that twenty-nine percent, and even seventy-eight and ninety-two percent, reductions in value have not been enough to sustain a takings claim. Giovanella, 447 Mass. at 734.
Here, the plaintiff simply asserts but does not offer evidence of any diminution in value of the property. The locus when purchased was limited by the presence of wetlands and the developers were aware that the prior owner was unable to obtain permits to develop the property. Development remains limited by the presence of wetlands today. See FIC Homes of Blackstone, Inc. v. Conservation Commn. of Blackstone, 41 Mass. App. Ct. 681, 693-694 (1996) (FIC Homes ). The plaintiff cites to no case where recovery of development costs was allowed under a regulatory takings theory when there has been no showing that the value of the property has been impaired by government action. Moreover, the record demonstrates that at the very least a single-family home can be constructed on the property. "A single family house is a sufficient practical use to prevent the wetland restrictions from constituting a taking." Moskow v. Commissioner of Envtl. Mgmt., 384 Mass. 530, 533 (1981).
In addition, the developers' verified complaint asserts that the market for subdivision lots collapsed during the administrative process rendering it economically unfeasible to pursue the project. Moreover, the record reflects that the developers pursued two other plans and filed two unsuccessful administrative appeals of the commission's denial, presumably at significant expense. We note that "[i]t is not sufficient that there be an economic impact of some kind as a result of the" commission's decision. W.R. Grace, 56 Mass. App. Ct. at 573. "All governmental regulation of business has an economic impact of some kind, and the formulation by the Supreme Court of the 'economic factor' must contemplate more than that.... [F]or there to be a taking, the owner must satisfy the burden of showing that there has been a negative economic impact as a direct consequence of the government's action, rather than as a product of the owner's own activities or decisions." Ibid. In other words, a takings claim is not insurance for economic downturns or business decisions, wise or unwise. Even if it could be said the commission unreasonably delayed review of the revised final plans or that the requirement of the two-season growing period for wetlands replication caused an unreasonable delay in the project, there is no affidavit or other evidence that demonstrates that the delay and the conditions imposed by the commission are what caused the developers to be unable to proceed with the development. Further, the plaintiff has not shown that the commission even was required to act on the revised plans while the developers actively appealed the 2007 final decision. The plaintiff does little more than point to what he alleges are arbitrary and capricious conditions without (i) recognizing that a claim that the conditions are arbitrary and capricious has been waived, (ii) offering evidence connecting the commission's decision and conduct to a reduced value of the property, or (iii) causally connecting the commission's decision and conduct to the developers' inability to proceed with the subdivision. This is not enough to defeat the commission's summary judgment motion.
2. Interference with distinct investment-backed expectations. Wetlands restrictions "may deprive an owner of a beneficial property use-even the most beneficial use-without rendering the regulation an unconstitutional taking." Moskow, 384 Mass. at 533, quoting from Lovequist v. Conservation Commn. of Dennis, 379 Mass. 7, 19 (1979). "What may be characterized as forbidden takings are those governmental actions which strip private property 'of all practical value to them or to anyone acquiring it, leaving them only with the burden of paying taxes on it.' " Lovequist, 379 Mass. at 20, quoting from MacGibbon v. Board of Appeals of Duxbury, 369 Mass. 512, 517 (1976).
The plaintiff argues that the commission violated the developers' reasonable expectations by imposing unexpected and costly burdens. However unexpected, the developers' failure to pursue their appeal of the conditions prevents the plaintiff from arguing that the conditions exceeded the commission's authority or were arbitrary and capricious. In addition, as discussed above, the plaintiff has failed to raise a genuine issue of material fact that the conditions imposed were what interfered with the developers' investment-backed expectations, rather than their business decisions or the unexpected fall in the real estate market. Speculation that there would be a reduction in the pool of prospective purchasers or delayed sales because a certificate of compliance would not issue for five years is unsupported by credible evidence. In addition, the plaintiff's suggestion that the developers' personal expectations are what is important is unavailing as the test is whether the commission interfered with reasonable investment-backed expectations based on existing conditions. See W.R.Grace, 56 Mass. App. Ct. at 573-574.
The plaintiff simply did not raise a genuine issue of material fact as to whether the commission seriously interfered with the developers' investment-backed expectations.
3. Character of the governmental action. Finally, the character of the governmental action did not amount to a physical invasion of the plaintiff's property. FIC Homes, 41 Mass. App. Ct. at 695. "A requirement that a person follow administrative procedures for obtaining a permit is not a taking of property." Wilson, 413 Mass. at 356-357. The delay in reviewing the revised plans required by the 2007 final decision occurred while that decision was being appealed. Moreover, the requirement of the two-season growing period ensures that replicated wetlands are in place before existing wetlands are disturbed. The character of government action is less likely to result in a taking when its objective is preventing harm. Giovanella, 447 Mass. at 735.
We have considered whether the condition making the 2007 final decision personal to the developers and transferable only with the commission's permission somehow constitutes a taking. Even if the plaintiff could show that restricting the transfer of the 2007 final decision in effect restricted the transfer of the property itself, the plaintiff's suggestion that the restriction constitutes a taking is unavailing. In Steinbergh v. Rent Control Bd. of Cambridge, 406 Mass. 147 (1989) (Steinbergh I ), the Supreme Judicial Court held that the city of Cambridge lacked authority to adopt an ordinance which prohibited sales of certain condominium units without the rent control board's approval. In Steinbergh v. Rent Control Bd. of Cambridge, 413 Mass. 736 (1992) (Steinbergh II ), the plaintiffs in Steinbergh I sought damages for a temporary regulatory taking for the time period the unlawful ordinance was in place. The Supreme Judicial Court rejected the takings argument, Steinbergh II, 413 Mass. at 744-747, and the plaintiff here makes no reasoned argument distinguishing the facts before us from Steinbergh II.
Finally, the plaintiff cites Giovanella to suggest that a regulation that unfairly singles out an owner may constitute a taking. To the extent the plaintiff's argument that the developers were treated differently from other applicants is not barred by the failure to complete the certiorari appeal, there was no showing that other applicants were similarly situated.[8] We agree with the judge that, in the absence of evidence regarding other applicants' proposed similar projects, the claim is unavailing. Even where a party offered an affidavit of an expert who reviewed other plans but provided no information as to the specifics of those subdivisions, we held that the appellant failed to show the board acted arbitrarily or abused its discretion by treating substantially similar plans differently. Collings v. Planning Bd. of Stow, 79 Mass. App. Ct. 447, 456 (2011).
Also unavailing is the plaintiff's argument that the commission's actions were taken with the purpose of thwarting the development plans and not with the purpose of advancing the Commonwealth's legitimate wetlands interest and, therefore, the actions constitute a taking. See Gove v. Zoning Bd. of Appeals of Chatham, 444 Mass. 754, 759-760 (2005), quoting from Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 548 (2005) (whether application of a regulation "substantially advances legitimate [S]tate interests" is a due process inquiry, not a takings test, and "has no proper place in our takings jurisprudence"). There is no due process claim before us.
For all of the foregoing reasons and those stated by the motion judge, we conclude that the plaintiff's takings claim properly was denied.
D. Other claims. The claims against Jeffrey Kane, Marie Simpson, and Jason R. Talerman were dismissed for failure to comply with discovery requests. Although the plaintiff argues on appeal that the sanction of dismissal was too harsh, for the reasons stated by the judge, we discern no error. Moreover, where separate and final judgment entered as to Talerman and Kane in June of 2013 and as no appeal was taken within thirty days, the developers waived their right to appeal. See Mass.R.A.P. 4, as amended, 430 Mass. 1603 (1999); Mood v. Kilgore, 384 Mass. 459, 462 (1981) (notice of appeal must be filed within thirty days of the entry of judgment). Although Simpson asks for costs and fees, we do not view the plaintiff's arguments as frivolous.
Finally, on appeal, the plaintiff makes no argument as to Graves, and, therefore, the plaintiff has waived that appeal. Graves has requested an award of the attorney's fees incurred on appeal, as well as costs. We agree that an award of reasonable fees and costs is appropriate. Graves may submit a petition for fees and costs, together with supporting materials, within fourteen days of the date of this decision. The plaintiff shall have fourteen days thereafter to respond. See Fabre v. Walton, 441 Mass. 9, 10-11 (2004).
Judgments affirmed.

John Scott and Robert Brown, principals of Pine Creek Development Corp. (collectively, "the developers") acquired thirty-four acres of the locus at issue for $225,000 in 2000. Because the locus was land-locked, the developers purchased an abutting parcel for $300,000. Scott was aware that other developers had considered or tried to develop the original parcel, one at substantial expense, but could not get the necessary permits. Richard Beach (the plaintiff) provided one million dollars in capital to fund the purchase and development of the locus. Over several years, the developers executed other loan transactions in addition to the amount owed to Beach. When they defaulted on their loan with the private lender 54 LLC, it foreclosed on the property in approximately 2011. With a debt of approximately $2.9 million dollars, Brown and Scott sought protection in the bankruptcy court. They assigned their rights in this action to the plaintiff by court order dated March 27, 2014.

The record is not clear whether "two full growing seasons" is two years or a spring and a fall. John Scott's errata sheet states, "I think that it's reasonable to assume that a growing season goes from April 1 through September 30." The commission stated in its discovery responses (where the plaintiff assumed that a growing season was April 1 through October 31) that "two growing seasons is not necessarily equivalent to two years" and could be spring and fall. This was significant because the developers had obtained a special permit from the Norfolk zoning board of appeals to construct a bridge but the permit would lapse if construction did not begin within one year. The special permit provided that the zoning board of appeals had discretion to extend the period of the permit for "good cause."

Hereafter we refer to the town and commission, collectively, as the commission.

Indeed, the judge's July, 2015, summary judgment memorandum and order states that the plaintiff does "not challenge the underlying validity of the wetlands regulations or any of the specific conditions in the Final Order, but argue[s] those conditions work a regulatory taking."

The plaintiff may well be attempting to convert an equal protection argument into a takings claim. "The courts of this Commonwealth and the First Circuit [of the United States Court of Appeals] have emphasized that the denial of a land use permit does not rise to a constitutional violation absent special considerations. 'Liability in the instant type of equal protection case should depend on proof that (1) the person, compared with other similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " Daddario v. Cape Cod Commn., 56 Mass. App. Ct. 764, 772-773 (2002), quoting from Rubinovitz v. Rogato, 60 F.3d 906, 909-910 (1st Cir. 1995). "As this court has stated, the 'allegation that others similarly situated obtained permits is not, without more, a denial of equal protection of the laws. Allegations of clear and intentional discrimination are required.' " Daddario, 56 Mass. App. Ct. at 773, quoting from Rosenfeld v. Board of Health of Chilmark, 27 Mass. App. Ct. 621, 628-629 (1989). That others were granted permits without the same conditions, without more, is not enough to support an equal protection claim. Daddario, 56 Mass. App. Ct. at 774.