ELLEN DURR & another *vs.* HARRISON G. O. CHASE.

Suffolk.    December 4, 1893. — March 5, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Lease — Extrinsic Evidence — " Building."*

</div>

An action was brought by a lessee against his lessor for a breach of the terms of a lease which recited that the lessor let "all the brick building recently erected by me on the northerly corner of S., P., and S. M. Streets in the said B., with the exception of the stores on the first floor of the said building together with the cellar under and belonging to the same." *Held,* that for the purpose of showing what building was covered by the lease oral evidence was competent to show where, at the time of the execution of the lease, the streets were, and what building was on the corner of these streets then recently erected by the defendant.

A lease recited that the lessor let "all the brick building recently erected by me on the northerly corner of S., P., and S. M. Streets in the said B., with the exception of the stores on the first floor of the said building together with the cellar under and belonging to the same." *Held,* that the fact that the corner building, which had been originally two buildings and had been converted into one by the removal of the partition wall, was originally designed by the defendant for three flats, but that prior to the execution of the lease, at the request of the plaintiff, it had been changed into lodgings, while the adjoining building on P. Street, which was separated from the corner building by a solid brick partition wall with no opening of any kind between the buildings, contained, above the store on the first floor, three suites of rooms adapted for housekeeping, warranted the finding that the lease did not include the latter building.

At the trial of an action by a lessee for a breach by the lessor of the terms of a lease in withholding a portion of the premises alleged to have been included in the lease, evidence that, prior to the execution of the lease, the plaintiff informed the agent of the defendant for what purpose he proposed to use the premises, is inadmissible.

At the trial of an action by a lessee for a breach by the lessor of the terms of a lease, in withholding a portion of the premises alleged to have been included in

the lease, evidence of the plaintiff, who had not qualified as an expert, of the fair average rental value of the rooms in that part of the building not occupied by him if he had furnished and occupied them for a lodging house, as well as what the same rooms would have been worth to him for the purpose of a lodging house if he had not paid any larger rent, is inadmissible.

In an action by a lessee against his lessor for a breach of the terms of a lease which recited that the lessor let " all the brick building recently erected by me on the northerly corner of S., P., and S. M. Streets in the said B., with the exception of the stores on the first floor of the said building together with the cellar under and belonging to the same," the plaintiff requested rulings, in substance, that the word " building" meant structure, and applied to and included all that structure erected by the defendant just prior to the date of the lease " on the northerly corner of S., P., and S. M. Streets in the said B." under one roof; that the word " building" could be so construed as to include one or more tenements in the same structure, although the different tenements therein might be separated and divided from the other parts by a partition wall; that the words of the lease referred to the entire structure owned by the defendant and recently erected by him on that corner, except such portions of the same as were specifically excepted from the operation of the lease, without regard to the manner in which it was partitioned or divided. The judge declined so to rule. *Held*, that the requests related to the meaning of the description of the premises in the lease as applied to the building and land, and could not be given as pure matters of law, independently of any evidence relating to the building on the corner of the streets mentioned, and that the plaintiff had no ground of exception.

CONTRACT, for the breach of the terms of a lease. Trial in the Superior Court, without a jury, before *Thompson*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that shortly before October 1, 1887, the plaintiffs, seeing a structure in process of erection at the corner of Staniford, South Margin, and Prospect Streets in the city of Boston, entered it for the purpose of examining it, and went up a flight of stairs leading from Staniford Street, but, finding the building filled with workmen and in confusion, went no farther, and made no further examination of it; and that at that time the wall of the building facing Staniford Street was up and finished, with the exception of the interior thereof. A witness for the plaintiff testified that the structure looked from the outside like one solid building, and that there was, in his opinion, no way to designate that it constituted two buildings. Later, the plaintiffs called upon the agent of the defendant, and on October 10, 1887, the defendant leased to the plaintiffs for the term of three years " all the brick building recently erected by me on the northerly corner of Staniford, Prospect, and South Margin Streets in the said Boston, with the exception of the

stores on the first floor of the said building together with the cellar under and belonging to the same."

The plaintiffs never entered the structure prior to the execution of the lease, except as above described, and the defendant never pointed out the structure to the plaintiffs, or showed them what parts of it they were to occupy under the terms of the lease. The plaintiffs took possession of the premises in the early part of November, 1887, and occupied that part of the structure over the stores facing South Margin Street, containing about eighteen rooms, during the term of the lease, paying without objection the full rent thereunder, but were never given possession or occupancy of any other part of the structure.

It further appeared by uncontradicted evidence that the structure had been made out of three small original buildings, two of which faced South Margin Street, and one of which faced Prospect Street; that at the time of the alterations the two buildings facing South Margin Street were converted into one by the removal of the partition wall between the same, and that the third building, facing Prospect Street, was separated from the others by a solid brick partition wall, which extended from the cellar to a foot or more above the roof, with no door, passageway, or other opening through it, and that, with the exception of extensions and elevations, it was substantially the same wall as divided the original buildings facing South Margin Street from the third building, facing Prospect Street; that that part of the structure on the South Margin Street side of the brick partition wall contained eighteen rooms, while that part of the structure on the other side thereof contained three flats or suites of four rooms each, each flat or suite being adapted for family housekeeping; that during the occupancy by the plaintiffs of the premises on South Margin Street the premises in controversy were occupied by other persons without objection by the plaintiffs; and that the plaintiffs never, until shortly before the termination of their tenancy, made any complaint of not having had all that they leased.

The defendant introduced evidence tending to show that the said structure was divided by a solid brick partition wall as above stated; that on Prospect Street the rear of the corner building occupied by the plaintiffs was carried straight up, while the

neighboring building claimed by the plaintiffs was lower and had a French roof, which plainly distinguished it from the other on Prospect Street; that Staniford Street at the time of the execution of the lease had recently been extended, and that there were no numbers for the street at that time, so that the description of the corner building, which as altered fronted on Staniford Street, could not be made by numbers; that the corner building was originally designed by the defendant for three flats, but that, at the request of the plaintiffs prior to the execution of the lease, it was changed into lodgings, and that iron kitchen sinks in certain of the rooms were then removed; and that there were two stores below the corner building. The defendant further introduced evidence tending to show that the plaintiff Durr had a conversation with his agent, in which she asked what the cost would be of the neighboring building, and was told that it would be five to six hundred dollars extra, and was advised to take the corner building, and see how she got on there, and then arrange about the other later; and that at the date of the execution of the lease, and of the visit of the plaintiffs to the premises, the walls and partition of the two buildings were up, some of the floors were laid, stairs were in place, and both buildings were well along toward completion. This was denied by the plaintiff Durr. It did not appear affirmatively, other than by the foregoing evidence, whether the plaintiffs knew of any partition wall before the execution of the lease, or that the wall or roof facing Prospect Street was different in appearance from that facing Staniford Street.

At the trial, the plaintiffs offered to show that, prior to the execution of the lease, they informed the agent of the defendant for what purpose they proposed to use the premises. The offer was excluded; and the plaintiffs excepted.

The plaintiffs also offered to show, by the testimony of the plaintiff Durr, who had not qualified as an expert, what would be a fair average rental value of the twelve small rooms in that part of the building not occupied by them, if the plaintiffs had furnished them and occupied them for a lodging house, and also what the twelve rooms which were not occupied by them would have been worth to them for the purpose of a lodging house if they had paid no larger rent. The offer was excluded; and the plaintiffs excepted.

The plaintiffs requested the judge to rule as follows: 1. The construction of every written instrument is a matter of law for the Court. 2. In the construction of the lease, the word " building" means structure, and applies to and includes all that structure erected by the defendant just prior to the date of the lease " on the northerly corner of Staniford, Prospect, and South Margin Streets in said Boston" under one roof. 3. In the construction of this lease the word " building" can be so construed as to include one or more tenements in the same structure, although the different tenements in the same structure may be separated and divided from the other parts by a partition wall. 4. In the construction of the lease, the words " all the brick building recently erected by me on the northerly corner of Staniford, Prospect, and South Margin Streets in the said Boston, with the exception of the stores on the first floor of the said building together with the cellar under and belonging to the same," refer to the entire structure owned by the defendant and recently erected by him on that corner, without regard to the manner in which it was partitioned or divided. 5. A lease of " all the brick building recently erected by me, with the exception of the stores on the first floor of the said building together with the cellar under and belonging to the same," means the entire structure which had been recently erected by the defendant, except such portions of the same as were specifically excepted from the operation of the lease. 6. The lease is a contract between the parties, and if it has never been cancelled or modified the court must construe it, and parol evidence is not admissible to show any other or different contract than the one executed by the parties. 7. The fact that the plaintiffs hired this building for a special purpose may be proved by oral evidence, and need not be stated in the lease. If the court finds this property was hired by the plaintiffs for a lodging house, and so stated to the defendant, or his agent, before the execution of the lease, the measure of damages is the amount of loss the plaintiffs suffered in their business by reason of the acts of the defendant in keeping them out of any portion of the premises included in the lease. 8. Parol evidence of the practical construction given to a lease by the subsequent acts of the parties thereto is not admissible unless the language thereof in the description of the property leased is doubtful.

The judge gave the first, sixth, and eighth rulings as requested, but refused to give the others; found that there was a latent ambiguity in the lease, and admitted evidence to explain what premises were covered by the same; found as a matter of fact that the lease did not include the building in controversy; and found for the defendant. The plaintiffs alleged exceptions.

*M. R. Thomas*, for the plaintiffs.

*H. W. Chaplin*, (*W. F. Dana* with him,) for the defendant.

FIELD, C. J. This case was tried by the court without a jury. By the lease, the defendant let to the plaintiffs "all the brick building recently erected by me on the northerly corner of Staniford, Prospect, and South Margin Streets in the said Boston, with the exception of the stores on the first floor of the said building together with the cellar under and belonging to the same," etc. The question at the trial was what building was covered by the lease. In applying the lease to the land, oral evidence was competent to show where, at the time of the execution of the lease, the streets were, and what building there was on the corner of these streets then recently erected by the defendant. Construing the lease with reference to the undisputed facts, we doubt whether any real ambiguity appears; but if there is any ambiguity, it is a latent, and not a patent ambiguity. The exceptions recite that the corner building, which had been originally two buildings and had been converted into one by removing the partition wall, "was originally designed by the defendant for three flats, but that, at the request of the plaintiffs prior to the execution of the lease, it was changed over into lodgings," etc. The adjoining building on Prospect Street was separated from the corner building by a solid brick partition wall, extending from the cellar to a foot or more above the roof, and contained, above the store on the first floor, three flats or suites of four rooms each, adapted for housekeeping. This partition wall between the two buildings had no openings of any kind from one building into the other.

The first exception is to the exclusion of evidence offered by the plaintiffs that "they informed the agent of the defendant for what purpose they proposed to use the premises." If this evidence was offered for any other purpose than to affect the damages, we do not see the pertinency of it. Certainly it does

not appear that the plaintiffs have been harmed by the exclusion of it.

The second and third exceptions relate to damages, and the witness was not qualified to testify on the subject.

Of the requests made at the close of the testimony, the first, sixth, and eighth were given. The seventh request relates to damages. The remaining requests relate to the meaning of the description of the premises in the lease as applied to the building and land, and could not be given as pure matters of law, independently of any evidence relating to the building on the corner of the streets mentioned.

The finding of fact by the court, that "the lease did not include the building in controversy," was warranted, if not required, by the undisputed facts.                    *Exceptions overruled.*