CHARLES W. LUND *vs.* HELEN COX.

Essex. November 14, 1932. — January 9, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Deed*, Construction. *Land Court*, Findings by judge. *Way*, Private: abandonment. *Words*, "The beach."

The respondent, at the hearing of a petition in the Land Court for registration free from encumbrances of the title to certain land by the sea in Gloucester, contended that granting the petition would abridge privileges of bathing and of keeping a bathhouse on the shore, given him by deeds of a common predecessor in title of the petitioner and the respondent in 1878 and 1881, and also would cut off a private way to the sea given by those deeds. The judge found the following facts in substance: The two deeds upon which the respondent relied respectively bounded the parcels by "a road or way laid out over said farm" and "the line of the Avenue laid out by the grantor; running to the sea;" which was shown on a plan referred to in both deeds and recorded in 1886. The deeds also gave the respective grantees "the privilege of erecting and keeping a Bath house on the Beach between" land about five hundred forty feet east of the way "and the end of said road or way," and "a privilege to build and hold a bath house near the beach." The petitioner claimed under two deeds from the same grantor given in 1882, both of which bounded in part on the way by name, but the bounds in the second of which showed that the grantor intended to obliterate the sea end of the way. The owner of premises east of the petitioner's lot more than thirty years before the hearing had built a house and stone walls which obstructed the way. The whole water front of the land of the common grantor was "a rocky shore unsuitable for bathing purposes, with the exception of a small extent of water front land" over one hundred sixty feet east of the easterly line of the way as described in the deeds upon which the respondent relied. The judge found that the obstructions to the way in question had not been maintained by the owners of the locus to which the petition referred, nor had any obstructions occurred "in the locus part of the way," and ruled that if the respondent could lawfully get to that part of the way he could still use it; but found and ruled that the right to use the way had been lost to the respondent by nonuser accompanied by obstruction for more than twenty years' duration prior to the filing of the petition. The judge ordered a decree registering the petitioner's title with a bound "by the sea" "free of encumbrances claimed by the respondent." The respondent appealed. *Held*, that

(1) The judge evidently gave to the words "the beach," in the deeds upon which the respondent relied, the meaning customarily

given to that phrase by residents at sea shore resorts, i.e., a strip of land above the usual high water line, more or less well defined by natural boundary, or in the rear by a sea wall, providing a convenient and safe access to the water for bathing or for sun baths either before or after going into the water; and in view of his findings as to the nature of the shore, found that the words "the beach" in the deed referred only to the bathing beach over one hundred sixty feet east of the locus;

(2) The decision of the Land Court did not abridge the respondent's rights respecting the beach;

(3) The findings and ruling by the judge that the respondent had lost his right to use the way to the sea by abandonment were justified;

(4) The decision of the Land Court was proper.

PETITION, filed in the Land Court on April 14, 1927, for registration of the title to certain land in Gloucester.

The petition was heard by *Smith*, J. Material facts found and rulings made by him are described in the opinion. The judge ordered a decree granting the registration of the title with one boundary "northerly by the sea," and "free of encumbrances claimed by the respondent." The respondent appealed.

*J. H. Kenney*, for the respondent.

*E. N. Carpenter*, for the petitioner.

PIERCE, J. This is an appeal by the respondent from "the decision" of the Land Court whereby it ordered "a decree" for the registration of the petitioner's land "free of encumbrances claimed by the respondent."

The respondent did not allege in her answer that she owned a fee in any part of the locus: she alleged therein that under two deeds in priority to that of the petitioner's predecessor in title, she acquired bathhouse and bathing privileges; that a road or way extended over the common grantor's land with its termini at Ipswich Bay and she acquired the privilege of erecting and keeping a bathhouse on the beach between land of Butler on the east and the end of said way. She also claimed the use of open and reserved spaces depicted on a plan recorded by the common grantor in Essex registry of deeds. She contended that the lines of the land sought to be registered protruded into and cut off Nashua Avenue which ran to the sea on

said plan and that the effect of registration without en-
cumbrances was to cut down and abridge her privileges
of bathing in Ipswich Bay and of keeping a bathhouse on
the land abutting the bay and near the beach.

We shall consider this case on the footing that on appeal
from the Land Court only questions of law raised on the
record can be considered. *Solovicos* v. *MacLachlan*, 236
Mass. 402. The decision of the Land Court discloses the
material facts which follow: The common grantor, Richard
W. Ricker, under whom the petitioner and respondent
derivatively claim title, in 1878 and prior thereto owned
and lived on a tract of land, including the locus, in the Bay
View section of Gloucester, extending from Washington
Street on the south to Ipswich Bay on the north and "situ-
ate and lying between the road running by the North side
of the Universalist Meeting House in Annisquam and the
Ocean at Ipswich Bay." Ricker in his lifetime executed
two deeds under which the respondent claims, and of which
the petitioner was bound to take notice, and two later
deeds under which the petitioner claims. The first of these
deeds was given by Ricker to one Wright in 1878. Speak-
ing generally, it covered a portion of the Wheeler farm, so
called, under which Ricker claimed, and more specifically
in terms expressed it covered lots numbered 21–25 inclusive
on a plan to be recorded in the Essex registry of deeds. This
deed in the part material to the respondent's claim of an
easement of way reads as follows: "Beginning at the North
Easterly corner of the premises at land of Benjamin F. But-
ler, and running by land of grantor Westerly, one hundred
feet to a road or way laid out over said farm . . . ." The
part of this deed material to the respondent's claim of
privilege of bathing in Ipswich Bay and keeping a bathhouse
on the land abutting the bay and near the beach reads as
follows: "Contents more or less, with the privilege of erect-
ing and keeping a Bath house on the Beach between land of
said Butler and the end of said road or way." The second
deed under which the respondent claims was given by Ricker
to one Ryan in 1881. This deed conveyed a certain piece
of land "situate at Bay View," Gloucester, and was bounded

as follows: ". . . thence Northeast one hundred and forty four feet to a stone post on the line of the Avenue laid out by the grantor; running to the sea; . . . . Also a privilege to build and hold a bath house near the beach." The petitioner claims under two deeds from Ricker to David Stevens in 1882. The first conveyed lot numbered 1 and the westerly half of lot 2 and the "flats and rocks to tide water situate west of said lot one" "on a plan made by Chas. H. Sargent." One boundary was a road laid out on said plan to be called Nashua Avenue. Privilege was "also granted the said Stevens to erect and maintain a bath house on that part of the beach reserved by grantor for bathing purposes, and situated north of the granted premises and a privilege to use said beach for bathing purposes." The second deed of Ricker to Stevens conveyed a certain parcel of land situated in that part of Gloucester called Annisquam. The bounds here material are "Beginning at the northeast corner of the granted premises on Nashua Avenue, . . . thence . . . southerly . . . thence . . . westerly . . . thence . . . northerly . . . thence turning and running westerly by land of grantee one hundred and five feet to the sea shore, thence turning and running in a northeasterly direction along the sea shore three hundred feet to a stone with a cross and a bolt, thence . . . southeasterly . . . to a split stone, thence turning and running southerly by said Nashua Avenue . . . thence . . . easterly along the south side of said Nashua Avenue to the point of beginning. Reserving the right of the grantor, Benjamin F. Butler and Elbridge Day to go to 'diamond cove' to take sea weed."

The judge admitted in evidence a plan, a reduced copy of which is annexed to his decision, and which is recorded at the end of book 1179 in the Essex South District Registry of Deeds. He found that there is no evidence who made this plan, or whether it is the plan referred to in many Ricker deeds; but he inferred that it was such plan and admitted it in evidence because he believed it to be the plan to which the grantor intended to refer when he referred to any plan. "Nashua Avenue" is shown on that plan as running to the sea.

The judge also annexed to his decision what he there denominated a "sketch . . . illustrating the salient features of" the decision. A copy of that "sketch" is as follows:

The dotted lines on the above plan which continue Nashua Avenue from Ocean Avenue to the sea show its position as it appears on the plan recorded in the Essex South District Registry of Deeds at the end of volume 1179, above referred to. According to the scale to which the sketch is drawn, the westerly bound of Diamond Cove would

be over one hundred sixty feet easterly of the easterly
dotted line showing the position of Nashua Avenue ex-
tended to the sea; and the "Butler land" was approxi-
mately two hundred forty feet east of the easterly side of
Diamond Cove and over five hundred forty feet east of the
easterly side of Nashua Avenue. The lot designated as
"locus" is the lot title to which the petitioner seeks regis-
tration. The lot bearing the designation "Carrie M.
Worthen" is that described as the "Worthen lot" later in
this opinion.

The judge found and ruled that in "both Stevens deeds
. . . the compass directions are, in most cases, about
ninety degrees in error, which fact is manifest from the
context of the deeds taken as a whole"; that the com-
pass error appears in the grant of easements as in the grant
of the fee title; and that the grantor intended to locate
these easements "east" and not "north" of the granted
premises. He further found that the whole water front of
the Ricker land is a rocky shore unsuitable for bathing
purposes with the exception of a small extent of water
front land east of the locus and shown on the above sketch
plan as Diamond Cove. The judge found and ruled that
the Wright deed, the Ryan deed and the first Stevens deed
laid out Nashua Avenue over the northeast corner of the
locus as shown by the dotted lines on the above sketch
plan, and that Wright and Ryan and those claiming under
them in one way or another were entitled under their two
deeds to assume that Nashua Avenue ran to the sea with
appurtenant right to use the same in connection with their
property, but that when the second Stevens deed was given
Ricker disclosed the clear intention to obliterate the sea
end of the avenue, and that this intention was binding on
all his subsequent grantees. The judge further found that
"The thirty-seven foot boundary 'by said Nashua Avenue'
is clearly across the northerly end of the same as Ricker
then conceived it to be," and said "end is in approximately
the same location as shown on the filed plan."

The decision recites that a survey plan of the Worthen
lot on the east side of the locus was in evidence. This plan

showed stone walls at the southerly front of the lot and buildings in part across the line of Nashua Avenue if it were extended from Ocean Avenue to the sea as shown on the sketch plan above. This avenue line crosses the northeast corner of the locus and is the way over which the respondent claims her rights are unimpaired. On all the evidence the judge found that "for more than twenty years prior to the filing of this petition the present owner of the Worthen lot and her predecessors in title have maintained the obstructions aforesaid shown on said . . . plan . . . with the exception of the garage at the southeast corner of the lot," and that prior to the erection of the garage ("last year") the stone wall on the south side extended substantially across the south side of the lot to connect with the wall on the east side; that there was always an opening in the wall in front of the house; and that "The house was built in its present location more than thirty-seven years ago," and the walls have been built since 1900. The judge found that the obstructions to the way in question have not been maintained by the owners of the locus, nor have any obstructions occurred "in the locus part of the way." He ruled that if the respondent could lawfully get to that part of the way she could still use it; but she must approach it over the Worthen lot, citing *Brooks* v. *West Boston Gas Co.* 260 Mass. 407, and he found and ruled that the right to use the way had been lost by nonuser accompanied by obstruction for more than twenty years' duration prior to the filing of this petition. The decision states: "I find and rule on the evidence and, especially by reason of the Worthen lot incident, that abandonment by the respondent and those under whom . . . [she] claims, of the way over locus, is to be presumed, and I find as a matter of fact that abandonment has occurred. . . . On all the evidence I find for the petitioner and order a decree accordingly, free of encumbrances claimed by the respondent."

The first error complained of is that the decision, ordering a decree free from encumbrances claimed by the respondent, wrongfully deprived her of privileges of erecting and keeping a bathhouse and of bathing on the beach

between land of Butler on the east and the end of the road or way. In support of this contention the respondent contends that the judge of the Land Court wrongly construed both deeds of Ricker to Stevens to give title to high water, thereby excluding title to the land to low water. The petition sought to have the land registered as bounded "northerly by the sea." Such a boundary would run along low water mark when the tide did not ebb further than to the extent of one hundred rods. *Boston* v. *Richardson,* 105 Mass. 351, 355. *Haskell* v. *Friend,* 196 Mass. 198, 201. But this error, if it be such, in decreeing registration "northerly by the sea" is immaterial in the light of the finding that by reason of compass error "all bathing and bathhouse privileges conveyed by said deeds are located somewhere east of the land included in this petition." An examination of the terms of the Wright and Ryan deeds set out in the decision shows that the finding was right. The respondent would seem argumentatively to contend that the word "beach" as used in the grants is to be given the same definition as when that word is used to describe a boundary and that as a consequence the privileges were granted to be exercised from the end of the road to Butler's land along the whole extent of the Ricker land between high and low water marks. This is the usual signification given to "the beach" in grants of land bounded upon tidal water, *Castor* v. *Smith,* 211 Mass. 473, but the words "the beach" have signification varying with conditions attendant upon the grants. Here the judge evidently gave to the words "the beach" the meaning customarily given to this phrase by residents at seashore resorts, i.e., a strip of land above the usual high water line, more or less well defined by natural boundary, or in the rear by a sea wall, providing a convenient and safe access to the water for bathing or for sun baths either before or after going into the water. In view of the fact that the judge found in the decision that "the whole water front of the Ricker land is a rocky shore unsuitable for bathing purposes, with the exception of a small extent of water front land east of locus," it is plain the judge treated the words "the beach" in this

secondary sense and that he properly did so. See *Brown*
v. *Lakeman*, 17 Pick. 444; *Wakeman* v. *Glover*, 75 Conn.
23. If "the beach" meant a certain defined locus between
the Butler land and the road referred to, and not that
part of the face of the rocks between high and low water
marks, there was involved merely an issue of the location
of the area mentioned to be, ascertained by evidence ex-
trinsic to. the deeds. *Durr* v. *Chase*, 161 Mass. 40, 45. In
the case here this resulted in the finding that the bathing
privileges were located to the east of the locus.

On the second point raised by the respondent, the finding
and ruling, that on the evidence and especially by reason
of the Worthen lot incident abandonment of the way over
the locus by the respondent and those under whom she
claims was to be presumed and that abandonment had
occurred, were correct. Abandonment of an easement or
not presents an issue of fact. *Willets* v. *Langhaar*, 212
Mass. 573, 575. *Les* v. *Alibozek*, 269 Mass. 153, 157–158.
Ordinarily findings of fact by the Land Court are final.
*Holmes* v. *Barrett*, 269 Mass. 497, 499. *Willard* v. *Kim-
ball*, 277 Mass. 350, 356. G. L. (Ter. Ed.) c. 185, § 15.
The finding here was based in part, if not principally, on
the findings of nonuser of that part of the way crossing
the Worthen lot accompanied by obstruction to the use of
that part of the way for more than twenty years prior to
the filing of the petition. There was no use of the way
continued over the locus for at least thirty-seven years.
Without elaboration of the reason leading to the result, we
think the facts found warrant the conclusion that the right
of way over the Worthen lot was extinguished, and that
since the easement over the locus could not have been
used as laid out except by crossing the Worthen lot where
the easement has been abandoned, it is also to be presumed
that there was an intention to abandon the easement.
Physical obstructions on the servient tenement, rendering
user of the easement impossible and sufficient in them-
selves to explain the nonuser, combined with the great
length of time during which no objection has been made
to their continuance nor effort made to remove them, are

sufficient to raise the presumption that the right has been abandoned and has now ceased to exist. *Swan* v. *Sinclair,* [1924] 1 Ch. 254, 269. On the facts found and as they are disclosed in the sketch appended to illustrate the decision, it may be presumed that the easement beyond the Worthen boundaries has been abandoned as a whole, especially where, as here, there has been no detour around the point of obstruction, and no use of that easement beyond the point of obstruction, for a great many years. See *Brooks* v. *West Boston Gas Co.* 260 Mass. 407; *Dubinsky* v. *Cama,* 261 Mass. 47, 57. Compare *Hancock* v. *Wentworth,* 5 Met. 446; *Central Wharf & Wet Dock Corp.* v. *India Wharf,* 123 Mass. 567; *Cetlin* v. *Bradford,* 242 Mass. 434, 444; *Mahon* v. *Tully,* 245 Mass. 571; *Jones* v. *Stevens,* 276 Mass. 318; *Phoenix National Bank* v. *United States Security Trust Co.* 100 Conn. 622.

*Decree of registration affirmed.*