## LAURA GIUFFRIDA *vs.* ZONING BOARD OF APPEALS OF FALMOUTH.

No. 06-P-153.

Suffolk. November 13, 2006. - March 6, 2007.

Present: RAPOZA, C.J., ARMSTRONG, & DREBEN, JJ.

*Cape Cod Commission. Regulatory Agency. Zoning,* Special permit. *Res Judicata. Judgment,* Preclusive effect. *Practice, Civil,* Moot case.

A Land Court judge properly dismissed as moot a civil action challenging a decision of the defendant town zoning board of appeals declining to extend the plaintiff's three-year special permit for a certain excavation project, where the project contemplated by the special permit extension application could not proceed without the approval of the relevant regional commission, and litigation to compel the grant of that commission's approval of the project had gone to final judgment against the plaintiff's predecessors in interest and was no longer appealable. [399-402]

CIVIL ACTION commenced in the Land Court Department on November 24, 1999.

A motion to dismiss was heard by *Leon J. Lombardi,* J.

*Douglas A. Troyer* for the plaintiff.

*Edward J. DeWitt (Frank K. Duffy, Jr.,* with him) for the defendant.

ARMSTRONG, J. The plaintiff, Laura Giuffrida, successor in interest to Francis E. Daddario,[1] appeals from an order of the

---

[1]Francis E. Daddario was the original applicant for the special permit discussed *infra.* He died on January 23, 2003, as a resident of Florida. His spouse, Lorena Daddario, was appointed personal representative of the estate by the Circuit Court for Broward County and was substituted as party plaintiff in the action prior to her own death on November 15, 2003. Laura Giuffrida, Mrs. Daddario's sister, was substituted as successor personal representative of Francis E. Daddario's estate by the Broward County Circuit Court on March 2, 2004, and although the papers showing her appointment were filed with the Land Court in the autumn of 2004, her motion seeking substitution was not filed until August, 2005. In a contested ruling, it was allowed on September 9, 2005.

judge of the Land Court dismissing an appeal from a decision of the zoning board of appeals of Falmouth (board). Daddario had applied to the board for extension of a three-year special permit the board had originally approved in November, 1996. The board refused the extension on November 8, 1999, and Daddario appealed to the Land Court. The case was not heard in the Land Court until 2005, when it was dismissed as moot.

*Background.* In 1994, Daddario applied for a special permit to allow him to excavate thirty-five acres of his land in Falmouth for sand and gravel in increments of five acres (development or project). The board did not then schedule a hearing on Daddario's application but referred it directly to the Cape Cod Commission (commission), established by St. 1989, c. 716 (the Act), for its approval as a "development of regional impact" (DRI). See § 12(*h*) of the Act. The commission, on February 25, 1995, disapproved the plan under § 13(*a*) of the Act. Daddario appealed the commission's denial to the Land Court under § 17(*b*) of the Act, attacking (1) the commission's decision as a regulatory taking and a denial of equal protection of the laws, and (2) the Act itself as void due to the vagueness in the criteria governing the commission's authority. On June 14, 1996, a judge of the Land Court agreed that the commission's denial amounted to a regulatory taking and ordered the commission to approve the development, subject to certain conditions.[2] The commission appealed that decision.

Meanwhile, as that appeal was pending, the board, whose consideration of Daddario's application for a special permit had been suspended during the commission's review, resumed its processing of Daddario's application.[3] The board at first denied the application without notice or hearing, possibly because it

---

[2] Under §§ 11(*h*) and 13(*f*) of the Act, a denial of a permit, if found to amount to a regulatory taking, is vacated, so that the owner is made whole, not by the payment of compensation, but by nullification of the order constituting the taking.

[3] Under § 12(*h*) of the Act, when an application for a special permit is referred to the commission, local authorities must suspend their review under the local by-law. Under §§ 12(*h*) and 13(*d*) of the Act, a DRI requires, in effect, two special permits to proceed: that of the commission, pursuant to the criteria of the Act, and that of the municipal permitting authority, under the criteria of the local zoning by-law. See *Daddario* v. *Cape Cod Commn.*, 425

regarded the application as moot in light of the independent rejection of the commission. Daddario appealed the board's denial to the Land Court, where the parties on August 6, 1996, entered a stipulation that the board would schedule a public hearing forthwith and decide the application in accordance with the Falmouth by-laws in effect at the time of the initial submission of Daddario's application in March, 1994.[4]

Following the hearing on November 12, 1996, the board granted Daddario a special permit to proceed with the development, subject to twenty-three conditions. Two are relevant to the appeal presently before us. Condition no. 20 stated that the special permit would "expire three years from the date this decision is filed with the Town Clerk as the By-law limits any earth removal permit to a maximum of three years."[5] The other, condition no. 23, "recognize[d] that work may not proceed on the development unless and until [the Land Court decision dated June 14, 1996,] is upheld by the Appellate Court(s)."

The decision on Daddario's appeal, which had been taken on direct appellate review by the Supreme Judicial Court, was handed down on July 11, 1997. *Daddario* v. *Cape Cod Commn.*, 425 Mass. 411, cert. denied, 522 U.S. 1036 (1997) (*Daddario I*). The decision vacated the Land Court's ruling that the commission's denial constituted a regulatory taking, and it remanded the case to the Land Court for further proceedings on the regulatory taking claim, including the establishment of a factual record that more amply showed what kind of development, if any, the commission would approve, and for consideration of Daddario's other constitutional claims. A different Land Court judge, sitting on the case on remand, denied each of Daddario's remaining claims and ordered Daddario's appeal from the commission's denial dismissed. This second decision of the Land

Mass. 411, 413 n.2, cert. denied, 522 U.S. 1036 (1997).

[4]This stipulation was of decisive importance because, in 1995, the Falmouth zoning by-laws had been amended to preclude granting a special permit for any earth removal work in a water resource protection district, and all of Daddario's parcel lay within such a district.

[5]Condition no. 20 went on to say: "This special permit may be renewed thereafter with a public hearing legally advertised in accordance with Section 240-152 [of the town by-laws]. Applications for renewal must be made ninety days or more before expiration of the current valid special permit."

Court was affirmed by this court December 18, 2002. *Daddario v. Cape Cod Commn.*, 56 Mass. App. Ct. 764 (2002) (*Daddario II*). Daddario's application for further appellate review was denied, 438 Mass. 1110 (2003), as was his petition for certiorari, 540 U.S. 1005 (2003). At that point, therefore, all avenues of appeal from the commission's denial had come to an end.

*Present appeal.* We come now to the matter of the present appeal. The special permit that the zoning board granted to Daddario on November 12, 1996, was approaching its three-year expiration date in the late summer of 1999 — indeed, the ninety-day notice period required for renewal would be reached on August 12, 1999. In July, 1999, therefore, Daddario applied for a renewal of the permit, pointing out that he had been precluded from excavating due to the then still pending appeals from the commission's refusal to approve the project. The board held a hearing on the application on August 25, 1999, and denied the extension on November 8, 1999, primarily for the reason that, as a result of the 1995 by-laws amendment, earth removal work was no longer a specially permitted use in the water resource protection district in which Daddario's entire property lay.[6]

Daddario took a timely appeal to the Land Court from the board's 1999 decision, but the appeal was stayed while Daddario's appeals from the commission's denial dragged on. Those appeals finally ended in November, 2003, when the United States Supreme Court denied certiorari to review this court's decision in *Daddario II*. No motion to remove the stay (as well as to allow the substitution of Laura Giuffrida) was brought, however, until August, 2005. Over objection, a Land Court judge allowed the substitution motion, removed the stay of proceedings, and allowed the board's motion to dismiss the appeal as moot. Giuffrida appealed to this court, arguing that it was error for the Land Court to dismiss the appeal as moot. The board argues that it was error to allow Giuffrida's substitution

---

[6]In its decision, the board explained that it could not apply the 1995 amendment when it first granted the special permit in 1996 because it was operating under the mandate of the stipulation, one term of which required the board to consider Daddario's application under the by-laws as they stood in 1994, when the application was filed. See note 4, *supra.*

as plaintiff, though it (i.e., the board) neither filed a notice of appeal nor entered an appeal in this court.

It is necessary to deal only with Giuffrida's appeal. The board's argument in support of its motion was that Giuffrida, lacking the commission's approval for the work contemplated by the special permit application, cannot proceed with excavation work even if she should succeed in getting the special permit extension from the board; that is to say, the extension at issue in the appeal is no longer of any practical importance.

Giuffrida's response is that the approval by the commission of the sand and gravel excavation project neither is nor was required under the Act, because the contemplated work is not a DRI. It was merely *assumed*, Giuffrida argues, in *Daddario I* and *Daddario II* that the commission's approval was required, but there was no *holding* to that effect, precisely because it was not a disputed issue. Thus, Giuffrida argues, the statement in *Daddario I*, 425 Mass. at 413, "The project qualified as a development of regional impact and the board referred it to the commission for review," and the statement in *Daddario II*, 56 Mass. App. Ct. at 765 n.2, "A DRI is defined by statute to be a 'development which, because of its magnitude or the magnitude of its impact on the natural or built environment, is likely to present development issues significant to or affecting more than one municipality.' § 2(*h*) of the Act. There is no question that the development at issue meets that definition," were mere dicta, and the issue of the validity of the commission's denial, which was the subject of seven proceedings in four different courts over an eight-year period, was, in effect, much ado about nothing.

Giuffrida may not escape so easily, we think, from the consequences of her predecessors in interest having failed to raise the issue earlier. The Act, which confers jurisdiction on the commission and confers on the Superior Court in Barnstable County and on the Land Court jurisdiction to hear appeals from the commission's decisions, states in § 17(*d*): "The court shall, on appeal, hear all evidence pertinent to the authority of the commission and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of the commission or make such other decree as justice and

equity may require. The foregoing remedy shall be exclusive."[7] As Giuffrida concedes in her brief, "[t]he [c]ommission held that it had jurisdiction over the project as the Act provides that any proposed industrial development comprised of outdoor commercial space greater than 40,000 square feet ['shall be presumed to be' a DRI]."[8] Thus the Land Court on the first appeal in 1996 could have considered any contention by Daddario that his proposed development was not a DRI within the meaning of the Act, and, hence, that the commission was without authority to approve or preclude it. Having chosen not to contest the classification of his development as one of regional impact before the board, the commission, or the Land Court, Daddario in effect waived such a contention for purposes of the 1994 application.

One challenging the validity of an order before an agency or a court is bound by an unappealed adverse ruling, not only as to the grounds he raised, but as to those he might have raised but elected to forgo. *Boyd* v. *Jamaica Plain Co-op. Bank*, 7 Mass. App. Ct. 153, 163-167 (1979). "The doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action." *Heacock* v. *Heacock*, 402 Mass. 21, 23 (1988). See *TLT Constr. Corp.* v. *A. Anthony Tappe & Assocs., Inc.*, 48 Mass. App. Ct. 1, 6-8 (1999).

Because the project contemplated by the special permit extension application cannot proceed without approval of the commission, and because the litigation to compel the grant of the commission's approval has gone to final judgment against Giuf-

---

[7]See and compare G. L. c. 40A, § 17, second par. (in relevant part), applicable to zoning appeals: "The court shall hear all evidence pertinent to the authority of the board or special permit granting authority and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board or . . . authority or make such other decree as justice and equity may require. The foregoing remedy shall be exclusive . . . ." This formulation, derived from G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, as amended by St. 1935, c. 388, § 2, repealed by St. 1954, c. 368, § 1, has a construction long settled by *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 556-559 (1954).

[8]Giuffrida refers to § 12(c)(6) of the Act.

frida's predecessors in interest, and is no longer appealable, the question whether she is entitled to approval of the special permit extension is, as the judge ruled, moot.[9]

*Judgment of dismissal dated November 16, 2005, affirmed.*

---

[9]The board's request for costs of the appeal is denied.