NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-72                                         Appeals Court

KEN O'DONOGHUE, trustee,[1] & others[2] vs.  COMMONWEALTH & others.[3]


No. 16-P-72.

Suffolk.     December 5, 2017. - April 17, 2018.

Present:  Vuono, Sullivan, & Massing, JJ.


Res Judicata.  Judgment, Preclusive effect.  Seashore.  Real
     Property, Littoral property.  Words, "Beach."


     Civil action commenced in the Land Court Department on July
22, 1998.

     The case was heard by Harry M. Grossman, J.

---

     [1] Of the Rexhame Terrace Land Trust and of the R.B.
Preservation Trust.

     [2] William Mostyn, trustee of the Rexhame Terrace Beach
Trust; Jane Walker, trustee of the Walker Family Trust; Freya
Allen Shoffner, trustee of the Dawson/Shoffner Family 2001
Revocable Trust; Seth Coon, Keilah Coon, and Elena Prentice,
trustees of the Raleigh Road Family Trust of 2009; Karen Slawson
and Susan Brown, trustees of the Slawson-Rexhame Realty Trust;
William Mostyn; Sandra Mostyn; Timothy Burke; Sarah Burke; John
Coon, III; Judith Coon; Charles Pesko; and Jacqueline Pesko.

     [3] Clare Delaney, Leo Delaney, Brenda Johnson, Stephen
Leonard, Agnes McCabe, Marianne McCabe, Carole McDermott, James
McDermott, James McGowan, William McGowan, Elizabeth McManus,
Kristin Perry, and the town of Marshfield.

Brian Jay Rogal for the plaintiffs.
Robert W. Galvin for town of Marshfield.
Kendra Kinscherf, Assistant Attorney General, for the Commonwealth.


SULLIVAN, J.  The plaintiffs commenced this action against the Commonwealth in the Land Court to quiet title to certain "beach lots" in the Rexhame Terrace section of the town of Marshfield (town) and to remove a cloud on title that resulted from the decisions in Thomas v. Marshfield, 10 Pick. 364 (1830) (Thomas I), and Thomas v. Marshfield, 13 Pick. 240 (1832) (Thomas II).  The plaintiffs also sought damages for trespass against the individual defendants.  The town was allowed to intervene as a defendant.  In its answer the town asserted, as an affirmative defense, title to the beach lots set aside for use by all of the town's inhabitants as a common area, and further stated that the plaintiffs have only a right of "commonage" along with other inhabitants of the town.  The trial judge bifurcated the "public" portions of the case -- the claims among the plaintiffs, the Commonwealth, and the town -- and, following a trial, concluded that the plaintiffs had not met their burden of demonstrating title sufficient to quiet title or remove the cloud of title due to the decisions in Thomas I and Thomas II.  The judge further concluded that the town has

superior title in most if not all portions of the beach lots.[4]
The parties have filed cross appeals. Substantially for the
reasons stated by the judge in his careful, detailed, and well-
reasoned decision, we affirm.

1. Background. The judge made detailed factual findings,
which for the most part are undisputed. We repeat only those
necessary to give context to our discussion, noting where
material disputes arise. The judge's factual findings will not
be overturned unless clearly erroneous. See Whiteveld v.
Haverhill, 12 Mass. App. Ct. 876, 876 (1981); Feldman v. Souza,
27 Mass. App. 1142, 1143 (1989).

Marshfield Neck is a narrow plot of land that lies south of
the South River, north of the Green Harbor River, and is
bordered to the east by Massachusetts Bay. Rexhame Terrace is a
subdivision created by Sarah Ames in the late 1800s from a
portion of her large farm on Marshfield Neck. As laid out on a
revised 1891 subdivision plan, Rexhame Terrace is bordered by
Circuit Avenue East to the east.[5] A beach abutting Massachusetts
Bay lies east of Circuit Avenue East. The six "beach lots" at

---

[4] The judgment also addressed the public's rights over the
Rexhame Terrace subdivision roads, but there has been no appeal
from that portion of the judgment. Private claims, including
trespass claims, were bifurcated and not decided as part of the
judgment now before us.

[5] Circuit Avenue East is a "paper street" and does not exist
on the ground today.

issue lie between Circuit Avenue East and either the low or high water mark of Massachusetts Bay, on what is shown on the 1891 plan as "Marshfield Beach."[6]  The beach lots are not shown on the subdivision plans.  The parties indicated at oral argument that the beach lots are essentially coastal uplands and are not buildable lots.

The beach lots were created and first conveyed between 1910 and 1913 by individual deeds from Sarah Ames's son, Ray Ames. The thrust of the issue before us is whether Ray Ames had title to any of the beach lots when he originally conveyed them to the plaintiffs' predecessors in title.  The resolution of this issue brings us back to the original settlers of the town in the mid-1600s.

The parties agree that Joseph Beadle was the first settler of the property at issue.  The judge found that of the properties transferred to Beadle by the town and others in the mid-1600s, only one deed from the town bounded his property "east with the beach."  The parties' title experts agreed that at that time, bounding a lot "with" the beach did not pass title to the beach.  Other parcels transferred to Beadle included marshlands, which by definition are inundated with water, proving, according to the plaintiffs, that Beadle had acquired

---

[6] The beach at issue here is adjacent to the Rexhame Terrace subdivision and is sometimes referred to as Rexhame Beach.

property bounded by the ocean.  Based on expert evidence that the judge credited, however, he found that the marshlands were on the landward side of the beach and subject to tidal inundation as part of a tidal estuary rather than the ebb and flow of the ocean tide.

The Beadle farm passed through several families and became known in the 1700s as the Kent farm.  When John Kent died in 1753, his will divided his estate among his nine living children, and it was at this time that the property began to be described in deeds in terms such as bound by "the edge of the upland by the [s]ea," "on the edge of the bank about high water mark," and "the edge of the bank by the [s]ea."  Between 1759 and 1770, Anthony Thomas purchased portions of the Kent farm. In 1787, his estate divided the farm among his three sons. Briggs Thomas (Thomas) received the portion of the farm that is at issue in this case, along with "all the [p]rivilege of the beach adjoining [s]aid [l]and."  By deed recorded July 7, 1858, Thomas's farm was conveyed to Sarah A. Ames, Thomas's granddaughter, and was described as being bound "[e]asterly by the beach or [s]ea."  Sarah Ames subsequently granted by will to her seven children, including Ray Ames, portions of Rexhame

Terrace "to the sea."[7]  The plaintiffs' titles derive from deeds from Ray Ames, alone, between 1910 and 1916.

In addition, although the town released its interest in a portion of "the beach" to Ray Ames in 1916, the judge concluded, based on the description of the land in the release, expert evidence that he credited, and the fact that Ray Ames, on the day following the release, transferred to a third party property just north of the property at issue here, that the town's release did not concern the land at issue.[8]

The plaintiffs argued that the land grants to Joseph Beadle originally went to the high water mark, and that as a result of the Colonial Ordinance, ownership of the tidal flats vested in Beadle and ultimately passed to the plaintiffs.  The judge found, however, that the grant to Beadle of what became known as the Rexhame Terrace property was bound by "the beach," as that term was understood in the town in colonial times.  The judge explained that notwithstanding the usual meaning of "beach" as the land between the high and low water marks, "in colonial and historical Marshfield [the term] included some 'upland' area

_____

[7] The plaintiffs contend that the beach passed from Sarah Ames to Ray Ames individually because the will devised only lots on Rexhame Terrace to all of the children, and Rexhame Terrace, they contend, did not extend to the sea.  The rest of the farm -- which, the plaintiffs contend, included the beach -- was devised to Ray Ames.

[8] The plaintiffs do not contest this finding on appeal.

above the high water mark" on which livestock grazed.[9]  The judge credited expert evidence that the Rexhame Beach area had three geographical components:  "(a) an area of beach below the mean high water area (Coastal Beach)[;] (b) an elevated dune area landward of the beach (Coastal Dune)[;] and (c) landward of the dune area, portions of land with wetland characteristics."  All three, according to the expert, form a "barrier beach."  Based on other expert evidence he credited, the judge found that "[v]irtually all of the vegetation" edible by livestock grew on the landward side of the high water mark on the coastal dune. The judge carefully reviewed the language of the ancient deeds and the town's grant of commonage rights on the beach in 1645 and determined that the term "beach" clearly included uplands. The judge concluded that the plaintiffs, therefore, had no title to the beach lots and that title to the beach lots remained in the town.

The judge's decision was reinforced by consideration of the Supreme Judicial Court's decisions in Thomas I and Thomas II, which, he determined, preclude the plaintiffs from claiming title to the beach lots through the Biddle-Thomas-Ames chain of

---

[9] In October of 1645, the town granted a right of "commonage," i.e., the right to allow cattle, horses, and sheep to graze, to the residents of Marshfield Neck on the "beach" from the South River's mouth to the Green Harbor River's mouth. This was six months after the town had granted to Beadle "all the meadow about the reed ponds lying between this . . . and the beach."

title.  The Thomas litigation was prompted by legislation enacted in 1827 (act) which empowered the town to construct a sea wall to preserve and secure "the whole of Marshfield Beach" and further prohibited "neat cattle, horses, or sheep," that is, livestock, from grazing on the beach.  See St. 1826, c. 81, §§ 1, 2.  The act also provided a mechanism to compensate those having legal title in the beach for harm caused by the statute.  St. 1826, c. 81, § 7.  See Thomas I, 10 Pick. at 365-366.  Thomas sought damages pursuant to the act.  The judge in this case concluded that the Rexhame Terrace subdivision is located in approximately the same location as the "unfenced pasture" of Thomas, who is the plaintiffs' and the Ameses' predecessor in title.[10]

Thomas I, issued during the Supreme Judicial Court's October, 1830, term, was preceded by Thomas's action in the court of common pleas, which was decided during that court's April, 1830, term.  A transcript of that decision was admitted in evidence at the trial here.  It reflects that Thomas alleged in the first count of his complaint that he held the fee in the beach from the North River to his "fatting pasture."  The plaintiffs concede that Thomas's asserted title would include the beach lots at issue.  The court of common pleas jury, however, rejected Thomas's claim of title.  Specifically, "the

---

[10] The plaintiffs do not contest this finding on appeal.

Jury [found] as to the first issue that the complainant had no such title to or in the beach mentioned in his complaint or any part thereof."  The decision noted that Thomas also asserted rights of commonage over the entire beach; the jury rejected those claims as well.

On appeal, Thomas did not challenge the jury verdict regarding his title claim.  See Thomas I, 10 Pick. at 366-367.[11] As to the issues presented in Thomas I,[12] the Supreme Judicial Court concluded that the town's 1645 grant of express commonage rights over the beach to a certain neighborhood failed because either (i) the grant was indefinite in that the "neighborhood" limits were not defined, or (ii) the grant was of a life estate only.  Ibid.  Thus, the court concluded Thomas had no express commonage rights.  In Thomas II, 13 Pick. at 249-250, the Supreme Judicial Court rejected Thomas's claim that by allowing his livestock to graze all over the beach, he had acquired title to or an easement in any part of the beach by prescription.  The

---

[11] In both Thomas I and Thomas II, the court's and reporter's notes stated that Thomas did not claim the fee to any portion of the beach.  See 10 Pick. at 366; 13 Pick. at 244, 250.

[12] In Thomas I, Thomas sought damages under the act, claiming a right of commonage for his "neat cattle, horses, and sheep," either by prescription or by an express grant from the town of Marshfield.  10 Pick. at 366.  The court addressed only the express grant issue, ibid., leaving the prescription argument for later proceedings, which ultimately culminated in Thomas II.

court concluded that where Thomas admitted he had no fee in the beach, his use of a beach kept open to the public and used by others in a similar way could not give rise to a prescriptive easement. Ibid.

2. Discussion. a. Issue preclusion. The plaintiffs contend that the judge erred as a matter of law when he concluded that the decision of the court of common pleas, rendered final by Thomas I and Thomas II, had preclusive effect on the plaintiffs' claim to own the fee in the beach lots. The plaintiffs insist Thomas's title to the beach was not at issue in those cases and that title was not "actually litigated" for purposes of issue preclusion.

"[I]ssue preclusion 'prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.'" Petrillo v. Zoning Bd. of Appeals of Cohasset, 65 Mass. App. Ct. 453, 457 (2006), quoting from Heacock v. Heacock, 402 Mass. 21, 23 n.2 (1988). "Before precluding the party from relitigating an issue, 'a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication.'" Petrillo,

65 Mass. App. Ct. at 457-458, quoting from Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134 (1998). "Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment[, and i]ssue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action." Petrillo, 65 Mass. App. Ct. at 458, quoting from Kobrin v. Board of Registration in Med., 444 Mass. 837, 844 (2005).

Contrary to the plaintiffs' contention, the issue of Thomas's title to the beach was clearly raised and expressly decided in the court of common pleas.[13] The jury in that action specifically concluded that Thomas did not own the fee in any portion of the beach, and Thomas did not pursue an appeal of that decision. In pursuing the appeals in Thomas I and Thomas II, he accepted that portion of the decision that concluded that he did not hold the fee in any portion of the beach. As to the issue of title, therefore, the judgment of the court of common pleas, as affirmed on appeal, has preclusive effect. See

---

[13] The plaintiffs acknowledge that in the court of common pleas, Thomas asserted title to the beach lots, but they argue that he sought damages only for his loss of commonage rights in other parts of the beach. The record shows that Thomas asserted both title and commonage rights and asserted that he was totally deprived of all of his rights and "furthermore he will be subject to the necessity of [and] expense of erecting and maintaining nearly one mile of [f]ence to prevent his cattle" from grazing on the beach. He requested that a jury estimate the damages sustained by him due to the act.

Guiffrida v. Zoning Bd. of Appeals of Falmouth, 68 Mass. App. Ct. 396, 401 (2007) (parties and their privies are barred by unappealed adverse judgment).  See also Restatement (Second) of Judgments § 43(1)(b) (1982) (judgment that determines interest in real property "[h]as preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself").

Importantly, the act prohibited commonage on the full length of Marshfield Beach.  While insisting that Thomas owned a portion of the beach, the plaintiffs ask us to nonetheless infer that Thomas simply chose to pursue only his commonage and prescriptive rights and never pursued any rights arising from his title to a portion of the beach.  Thomas's focus on his commonage and prescriptive rights in Thomas I and Thomas II makes sense where, having lost on the title issue in the court of common pleas, he conceded that he did not own any portion of the beach.  We cannot, as the plaintiffs suggest, infer from that course of action that he had title to the beach but simply chose to forgo seeking damages for the harm to his title.  Indeed, we are hard-pressed to understand how Thomas's pursuit of damages for his loss of commonage rights, rather than damages due to the impairment of his title, aids the plaintiffs' current claim to title to the beach.

b.  Definition of "the beach."  Even if it were open to the plaintiffs to argue they have title to the beach lots via the chain of title dating back to Joseph Beadle through Ray Ames and his successors, they fare no better.  The plaintiffs argue that the judge erred in finding that land conveyed by the town to Beadle and other early settlers, described in part as bound by the beach, is not bound by the ocean.  "The Colonial Ordinance of 1641-1647 established that a person holding land adjacent to the sea shall hold title to the land out to the low water mark or 100 rods (1,650 feet), whichever is less."  Pazolt v. Director of the Div. of Marine Fisheries, 417 Mass. 565, 570 (1994).[14]  The plaintiffs contend that 310 Code Mass. Regs. § 10.27 (1997), defines a coastal beach as land subject to ebb and flow of the tide and, therefore, bounding a lot by the beach is the equivalent of bounding it by the high water line.  They argue, also, that the transfer of marshes, which by definition are inundated with water, necessarily means the property directly abutted the ocean.

---

[14] "The 'presumption of law is, that title to the flats follows that of the upland on which they lie, and proof of title to the upland established a title to the flats.'  Porter v. Sullivan, 7 Gray 441, 445 (1856).  '[A]n owner may separate his upland from his flats, by alienating the one, without the other.  But such a conveyance is to be proved, not presumed, and therefore ordinarily proof of the title in the upland thus bounded carries with it evidence of title in the flats.'  Valentine v. Piper, 22 Pick. 85, 94 (1839)."  Pazolt, 417 Mass. at 570-571.

Our cases have recognized that although the primary definition of beach is the area between high water mark and low water mark, "[t]he term has a flexible meaning depending upon the setting in which it is employed." Anderson v. DeVries, 326 Mass. 127, 133 (1950). See Lund v. Cox, 281 Mass. 484, 491 (1933); Hewitt v. Perry, 309 Mass. 100, 104 (1941). Relying on the town's grant of commonage or grazing rights on the beach in 1645, expert evidence that cattle do not graze below the high water mark, and the fact a "highway" was laid out on "the beach" in 1692, the judge concluded that the term "beach" in the early deeds clearly included uplands and did not consist solely of the land between high and low water marks. The plaintiffs' reliance on inflexible, current definitions of "beach" do nothing to diminish the judge's reasoned analysis of the early colonial deeds. That deeds beginning in the mid-1700s, nearly 100 years later, began to describe the property as bound by the sea or high water mark does not alter the original deeds and conveys no new rights. One cannot convey what one does not own. See Bongaards v. Millen, 440 Mass. 10, 15 (2003).

The judge carefully considered whether the transfer of marshland meant that the early settlers obtained property bounded by the ocean or sea. The judge's conclusion that the marshes were on the landward side of the beach is consistent with their description as lying between certain land "and the

beach."  Moreover, the judge credited the plaintiffs' expert's testimony that there was no marsh on the beach side facing the ocean; marshlands were on the inland side of the tidal estuary of the Green Harbor River.  The judge concluded from historical maps and expert evidence that "the beach" included land above the high water between the marshes and the sea.  Considering the totality of the evidence, we cannot say the judge erred in concluding that the early settlers of what became the Rexhame Terrace property did not receive title to the beach, including the uplands, claimed by the plaintiffs.[15]

c.  Superior title.  The judge found that the town has superior title to the beach "including the tidal flats together with all or a portion of the upland beach lots which abut the seashore," but concluded that he had insufficient evidence to definitively determine the boundaries of the town's property.  The judge did conclude, however, that the town owns a "sufficient portion of the upland area so as to vest title to it in Rexhame Beach including the tidal flats to the low water mark."  The plaintiffs essentially argue that the town cannot have superior title if it has not proven exactly what it owns.

---

[15] Because we conclude that the fee in the beach lots did not pass to the original grantees or to Sarah Ames, we need not resolve the plaintiffs' argument that the fee passed through her will to Ray Ames alone.  The judge concluded that even if Sarah Ames had title to the beach lots, Ray Ames inherited only a one-seventh interest in them.

Any flaws in the town's title, however, do not aid the plaintiffs in their efforts to quiet title to the beach lots or remove the cloud created by Thomas I and Thomas II. Separate and apart from the strength of the town's title, the judge determined, and we agree, that the plaintiffs did not receive title to the beach lots because their predecessors in title never had title to give.

The plaintiffs point out that the town's assertion of title to the beach is a "recent claim," that the town collected taxes from the beach lot owners for many years, and that the town contended in Thomas I and Thomas II that the Commonwealth owned the beach. The plaintiffs make no legal argument with proper citation to authority, however, that the town is thereby prohibited from asserting its title now. See Baird v. Massachusetts Bay Transp. Authy., 32 Mass. App. Ct. 495, 495-499 (1992) (argument does not meet requirements of Mass.R.A.P. 16[a][4], as amended, 367 Mass. 921 [1975], when "unsupported by citation or articulated reasoning").

d. Cross appeals. Finally, in their cross appeals, the Commonwealth and the town argue that the judge erroneously shifted the burden of proof to them to establish the western boundary of the "beach" or, as the judge put it, the land formerly designated as commonage existing between the Thomas farm and the seashore. Having asserted title to the beach as an

affirmative defense in their answers, we discern no error in the judge's conclusion that the town and the Commonwealth had the burden of proving the boundary of its property.  See Hughes v. Williams, 229 Mass. 467, 470 (1918); Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 548-549 (1997).

Judgment affirmed.